MACK, APPELLEE, *v.* ALLSTATE LIFE INSURANCE COMPANY; JAMES, APPELLANT.

---

(No. C-870082 — Decided
November 25, 1987.)

*Barrow & Peck* and *Pamela A. Philbin*, for appellee.

*Ronald E. Porter*, for appellant.

BLACK, P.J. The single question in this case is whether the insured's change of beneficiary of a life insurance policy was effective even though the insurance company had not accepted the request form that the insured signed and delivered to it. The originally named beneficiary sued the insurance company, which then interpleaded the "new" beneficiary, paid the insurance proceeds into court and was dismissed from the litigation. The trial court held that under the circumstances of this case, the proceeds belonged to the original beneficiary. We find no fault in that conclusion.

In *Rindlaub* v. *Travelers Ins. Co.* (1963), 175 Ohio St. 303, 25 O.O. 2d 177, 194 N.E. 2d 577, paragraphs one and two of the syllabus, the Supreme Court held that life insurance policy provisions regulating the manner of changing beneficiaries are "for the benefit of the insurance company *only* [emphasis added]," and that when the company has deposited the proceeds in court, the insured's "clearly expressed intent" will be determinative of the rights of the contesting claimants, even though the company did not "approve" the change of beneficiary.[1] Because we believe *Rindlaub* is distinguishable on the facts and does not control the instant case, a recitation of the *Rindlaub* facts will help explain our decision.

Colonel Bruce Douglas Rindlaub purchased two life insurance policies from Travelers Insurance Company ("Travelers"), naming his then wife, Alice P. Rindlaub, as primary beneficiary (and his daughter Cornelia as contingent beneficiary). Col. Rindlaub and Alice were divorced by a decree entered in the District Court of Osage County, Oklahoma, on June 4, 1946, to become effective on December 4, 1946. On July 2, 1946, Col. Rindlaub sent to Travelers two "witnessed statements" directing that Margaret Walker be substituted as primary beneficiary of both policies. The policies contained a uniform provision that a change of beneficiary would be effective only when approved in writing by the company.

Travelers replied that because the insurance policies had been issued in California and because California had community property laws that gave a spouse interest in all community prop-

---

[1] Paragraphs one and two of the syllabus of *Rindlaub, supra,* read:

"1. The provisions of a policy of 'old line' insurance regulating the mode and manner of effectuating a change of beneficiary are for the benefit of the insurance company only. (*Atkinson* v. *Metropolitan Life Ins. Co.* [1926], 114 Ohio St., 109, followed.)

"2. Where an insured during his lifetime communicated to the insurer his clearly expressed intent to name certain new beneficiaries and the insurer has interpleaded and deposited the policy proceeds in court, such expressed intention of the insured will be determinative of the rights of contesting claimants to the policy proceeds, notwithstanding the absence of the written approval by the insurer required by the provisions of the policy. (*Stone* v. *Stephens* [1951], 155 Ohio St., 595, distinguished.)"

erty, the company wanted information about Alice's "position in this matter," particularly whether she had released, or had been divested of, her interest in the policies. Col. Rindlaub never responded. Nothing further took place with respect to the two policies prior to his death about thirteen years later. The company never "approved" the change of beneficiary. Col. Rindlaub had married Margaret Walker on December 11, 1946, a week after his divorce from Alice became effective.

The Supreme Court held as follows: That the provision for written approval was for the benefit of the insurance company only; that the insurance company had no current interest in the dispute between the original beneficiary and the "new" beneficiary, having interpleaded the original beneficiary, deposited the insurance proceeds in court and "washed its hands" of the affair; and that the insured had expressed a clear intent to change the beneficiary from Alice to Margaret. His clear expression was determinative, and the proceeds were awarded to Margaret.

The facts in the instant case are similar in many respects, but the distinguishing feature is that the insured violated a temporary restraining order (TRO) issued by the domestic relations division when he attempted to change the beneficiary of his life insurance. It is undisputed that the court had subject-matter and personal jurisdiction.

George Mack, the insured, named his wife, Constance L. Mack, appellee herein, as the primary beneficiary of a reducing term life insurance policy on July 22, 1978, when he purchased it from Allstate Life Insurance Company ("Allstate"). She filed for divorce on September 20, 1985, and concurrently obtained a TRO that was served on him on September 24, 1985. The TRO, which remained in effect until his death, restrained him from transferring, disposing of or affecting in any manner any interest either party might have in any tangible or intangible asset, including life insurance policies.

On October 23, 1985, George Mack completed one of Allstate's "Request for Change of Beneficiary" forms, writing in the name of his sister Patricia James, appellant herein, as "1st class" beneficiary. However, he crossed that name out and wrote the same name above the crossout.

He signed and dated the form at the bottom, but he did not initial or sign the crossout. Allstate received the form on October 31, 1985, but did not "accept" it because it was company policy not to accept any form with a crossout that was neither specifically initialed nor specifically signed. Allstate's position was that a change of beneficiary form is a legal document affecting rights in the policy, and the company wanted to make sure that any change was in fact approved by the policy owner. (This is reasonable in light of the fact that disputes about the validity of a beneficiary change usually arise after the death of the policy owner.) While the policy allowed for change of beneficiaries, it required that the request be in writing and that the company "accept" the change before it became effective and was endorsed on the policy.[2] Allstate mailed a letter dated November 4, 1985, to

---

[2] The pertinent provisions of the policy read:

"*Change of Ownership or Beneficiary* — Unless you provide otherwise, you may change the owner or beneficiary of this policy during the insured's lifetime. Changes must be made by written request to Allstate, and Allstate may require return of this policy for endorsement. Upon written acceptance by Allstate, the change will

George Mack, asking him to fill out new forms containing "the complete address of all the beneficiaries" with no corrections or erasures. George Mack died November 16, 1985, without having replied to Allstate's letter.[3]

On February 21, 1986, Constance Mack brought the instant action against Allstate to recover the policy proceeds. Allstate followed the same procedure that Travelers had in *Rindlaub*: it interpleaded the contesting beneficiary (Patricia James), deposited the insurance proceeds into court, and asked for dismissal. Upon the dismissal of Allstate, each of the two claimants filed a motion for summary judgment. The trial court ruled in favor of Constance Mack, the original beneficiary.

A strict compliance with *Rindlaub* would require reversal. The insurance company's requirement that it must first accept a change of beneficiary before it would become effective is, under *Rindlaub*, of no legal significance once the insurance company deposits the insurance proceeds in court and is dismissed from the action. The dispute is then between the contending beneficiaries, and the determining factor is the insured's "clearly expressed intent."

However, if we were to award the insurance proceeds to Patricia James, the "new" beneficiary,[4] we would subvert the TRO issued by the domestic relations division and render it null and void.[5] We would allow the insured's "clearly expressed intent" to prevail over a valid court order. This we cannot do. Under the circumstances disclosed by the record, we hold that George Mack's attempt to change the beneficiary of the policy on his life was not effective because his right or authority to make any change was inhibited by the TRO, and that the trial court did not err in awarding the proceeds to Constance Mack, the original beneficiary.

The single assignment of error (claiming error in granting Constance Mack's motion for summary judgment) is without merit. We affirm the judgment below.

*Judgment affirmed.*

DOAN and HILDEBRANDT, JJ., concur.

---

take effect as of the date you signed the request, subject to any payments made or other action taken by Allstate before its acceptance of the change."

[3] While it is reasonable to infer that George Mack received Allstate's letter, we can draw no clear inference about why he failed to reply, in the absence of any additional facts or circumstances. However, we do not find it necessary to draw any inference because our decision rests on other grounds.

[4] It may be arguable whether the insured's intent was "clearly expressed" because he wrote "Patricia James" at the proper place on the form, crossed it out and wrote the same name just above the crossout. That "genuine issue" might prevent the granting of plaintiff's motion for summary judgment except that it is not "a material fact" under the circumstances of this case. It is not material because the insured had no right or authority under the TRO to change or attempt to change the beneficiary in the first place.

[5] Patricia James argues that at the moment of George Mack's death, the divorce action abated, *Porter* v. *Lerch* (1934), 129 Ohio St. 47, 56, 1 O.O. 356, 360, 193 N.E. 766, 770; see *Delaney* v. *Delaney* (1956), 102 Ohio App. 249, 2 O.O. 2d 271, 133 N.E. 2d 915, taking with it the TRO, and that the change of beneficiary became effective at that instant because the insured was no longer prohibited from making the change of beneficiary. We reject this argument. The fallacy in it lies in the fact that George Mack's power and authority to make a beneficiary change was under inhibition until the moment of his death, after which moment no change could have been made by anybody.