CONCEPCION, Appellee,

v.

CONCEPCION, Appellant.

[Cite as *Concepcion v. Concepcion* (1999), 131 Ohio App.3d 271.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–98–61.

Decided March 18, 1999.

[REDACTED]

*Karen S. Behm,* for appellee.

*David Klucas* and *Jill Hayes,* for appellant.

HADLEY, Judge.

Rose Bequilla Concepcion ("appellant") appeals the decision of the Seneca County Court of Common Pleas overruling her motion for summary judgment and granting summary judgment in favor of Shelly Ann Concepcion ("appellee"). For the reasons set forth below, we affirm in part and reverse in part the decision of the court below.

The facts of the case arose as follows. Appellee and Jonathan Bequilla Concepcion were married on June 5, 1984. Two minor children were born as issue of the marriage.

On December 2, 1990, Mr. Concepcion, the insured, purchased a life insurance policy through the Prudential Insurance Company. The policy (the "SGLI" policy) was issued pursuant to the Servicemen's Group Life Insurance Act of 1965 (the "SGLIA"). The policy carried death benefits in the amount of $200,000. Appellee was named a beneficiary of one-half of the proceeds of the policy. Appellant was also designated a beneficiary of one-half of the proceeds of the policy.

On December 5, 1990, Mr. Concepcion purchased a second life insurance policy (the "AFBA" policy) through the Hancock Mutual Life Insurance Company. The policy carried death benefits in the amount of $100,000. Appellee was designated the sole beneficiary of the policy.

On August 14, 1997, appellee filed a petition for divorce in the Seneca County Court of Common Pleas. At that time, appellee also filed a motion for a temporary restraining order precluding Mr. Concepcion from directly or indirectly changing the beneficiaries of the policies. On August 15, 1997, the trial court granted the order.

On August 24, 1997, in direct contravention of the temporary restraining order, Mr. Concepcion removed appellee as a one-half beneficiary of the proceeds under the SGLI policy. Thereupon, Mr. Concepcion designated appellant as sole beneficiary of the policy.

On September 10, 1997, again in contravention of the temporary restraining order, Mr. Concepcion removed appellee as the sole beneficiary of the AFBA policy. Thereupon, Mr. Concepcion designated appellant as sole beneficiary of the policy.

On September 17, 1997, Mr. Concepcion filed an affidavit with the trial court, under oath and in the presence of a notary public, which indicated that the designated beneficiaries of the policies had not been changed since the temporary restraining order went into effect on August 5, 1997. Mr. Concepcion died on October 13, 1997. At the time of Mr. Concepcion's death the divorce action was pending in the trial court.

On January 30, 1998, appellee commenced the present action to determine the rightful owner of the proceeds of each life insurance policy. Both parties filed cross-motions for summary judgment. Upon reviewing the evidence, the trial court overruled appellant's motion for summary judgment and granted summary judgment in favor of appellee. Thereupon, appellee was adjudged the rightful beneficiary of one-half of the proceeds of the SGLI policy, and was designated the true and rightful beneficiary of all of the proceeds of the AFBA policy.

From this judgment appellant appeals, setting forth the following sole assignment of error:

"The trial court erred by denying appellant's motion for summary judgment and granting Appellee's motion for summary judgment."

Appellant asserts in her assignment of error that the trial court erred in overruling her motion for summary judgment and in granting appellee's motion for summary judgment. For the following reasons, we affirm in part and reverse in part the decision of the court below.

In considering an appeal from the granting of a motion for summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388, 1389–1390. Accordingly, we apply the same standard for summary judgment as the trial court. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414.

Summary judgment is proper when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196, 1201–1203.

■ To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C).

We must now address the merits of this appeal. For purposes of clarity, we will address each policy separately below.

## I. The AFBA Policy

Appellant maintains in her assignment of error that the trial court erred in designating appellee as the sole beneficiary of the proceeds of the AFBA policy. For the following reasons, we disagree.

Appellant initially contends that the death of Mr. Concepcion abated the divorce proceeding, thus extinguishing the temporary restraining order issued by the trial court. We first turn to R.C. 2311.21, which provides:

"Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party."

Although divorce actions are not mentioned in R.C. 2311.21 as actions requiring abatement upon the death of one or both of the parties, settled authority appears

to support the dismissal of such actions. *Current v. Current* (July 2, 1991), Shelby App. No. 17–90–8, unreported, 1991 WL 128226.

The Supreme Court of Ohio in *Porter v. Lerch* (1934), 129 Ohio St. 47, 56, 1 O.O. 356, 360, 193 N.E. 766, 770, while observing that divorce actions are not among those that abate pursuant to the statute, held:

"Even in the absence of statute, it stands to reason that where one or both parties to a divorce action die before a final decree of divorce the action abates and there can be no revival. Circumstances have accomplished the primary object sought. 9 Ruling Case Law, 414, 415, Section 214. However, the weight of the authority supports the proposition that where death of one or both of the parties occurs *subsequent to a decree of absolute divorce,* whereby property rights are fixed, the action does not abate." (Emphasis *sic.*)

Thus, if a party in a divorce action dies following a decree that determines property rights and grants a divorce but prior to the journalization of the decree, the action does not abate upon the party's death. *Id.,* 129 Ohio St. at 56, 1 O.O. at 360, 193 N.E. at 770; *Caprita v. Caprita* (1945), 145 Ohio St. 5, 30 O.O. 238, 60 N.E.2d 483. In such circumstances, the trial court is vested with discretion to either dismiss the action or to enter judgment *nunc pro tunc* relating to the time of announcement of the decision. *Id.*

It is fairly well settled that the death of a party *prior to* adjudication of the issues in a pending divorce case causes the action to abate and ends any jurisdiction that a judge has over the case except to dismiss it. See *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 671 N.E.2d 236. The Supreme Court of Ohio in *Coffman v. Finney* (1901), 65 Ohio St. 61, 61 N.E. 155 held that an action termed "personal," such as for divorce or for determination and order of an alimony award, generally abates upon the death of one party to the action. However, an action that seeks to enforce *fixed rights and liabilities,* such as an action to enforce alimony already awarded, may survive the death of that party. *Id.* Thus, the test set forth by the court in *Coffman,* in determining whether an action abates upon the death of a party is *whether or not the action seeks to enforce fixed rights and liabilities.* See, also, *Diemer v. Diemer* (1994), 99 Ohio App.3d 54, 649 N.E.2d 1285.

In her brief, appellant urges this court to adopt the rationale and holding of the Eighth Appellate District in *Hook v. Hook* (1987), 35 Ohio App.3d 51, 519 N.E.2d 687. The facts set forth in *Hook,* which are analogous to the facts of the case *sub judice,* are as follows. The insured had named his wife as the beneficiary of his life insurance policy. During the pending divorce proceeding the trial court issued a temporary restraining order precluding the husband from changing the beneficiary of the policy. Despite the issuance of the temporary

restraining order, the insured changed the beneficiary from his wife to his brother. The trial court, however, awarded the proceeds of the policy to the insured's wife.

Upon appeal, the Eighth Appellate District held that the divorce action abated upon the death of the insured, which also extinguished the *ex parte* restraining order against him.

In the present case, Mr. Concepcion died while the divorce action was still pending in the trial court. The record reveals that the trial court had yet to reach any decision on the *merits* of the issues presented therein. No evidence was heard and no facts were adjudicated prior to Mr. Concepcion's death. Thus, the trial court would typically lack discretion to proceed with the case. For these reasons, appellant asserts that the death of the insured abated the divorce proceeding, which in turn extinguished the temporary restraining order against him. For the following reasons, we disagree.

On August 15, 1997, the trial court issued a temporary restraining order precluding Mr. Concepcion from changing the beneficiaries of his life insurance policies. Although an insured generally has the right to select a beneficiary of his choice, the purpose of the temporary restraining order was to maintain the *status quo*, thus preserving the rights and liabilities of the respective parties pending adjudication of the merits of the case. The effect of the trial court's temporary restraining order was to preserve the action, an issue wholly separate and apart from the issue of jurisdiction. See *Diemer*, 99 Ohio App.3d at 60, 649 N.E.2d at 1289. For these reasons, appellant's proposition lacks merit.

We must now determine whether the trial court erred in designating appellee as the sole and rightful beneficiary of the proceeds of the AFBA life insurance policy.

The facts of the present case are strikingly analogous to the facts set forth in *Mack v. Allstate Life Ins. Co.* (1987), 42 Ohio App.3d 101, 536 N.E.2d 671. In *Mack*, the insured purchased a life insurance policy, naming his wife as primary beneficiary. The wife later filed for divorce, and concurrently obtained a temporary restraining order precluding the insured from transferring, disposing of, or affecting any interest either party had in any life insurance policy. Despite the issuance of the temporary restraining order, the insured attempted to change the beneficiary of his policy. Prior to the adjudication of the divorce action the insured died. The trial court awarded the proceeds of the policy to the insured's wife, the original beneficiary under the policy.

Upon appeal, the First Appellate District held that the insured's attempt to change the beneficiary of the policy, having been in contravention of the temporary restraining order issued by the court, was ineffective. Thereupon, the court

awarded the proceeds of the policy to the insured's wife, the original beneficiary named under the policy.[1]

In *Candler v. Donaldson* (C.A.6, 1959), 272 F.2d 374, the Sixth Circuit Court of Appeals addressed an issue similar to the one presented in *Mack, supra,* and in the case herein. In *Candler,* during a pending divorce proceeding, the trial court issued a temporary restraining order barring the insured from disposing in any manner the properties or assets of either or both of the parties. The insured, notwithstanding the order of the court, changed the beneficiary of the life insurance policy from his wife to his mother. Prior to the resolution of the divorce action, the insured died.

The court held that although the husband has a right to change the beneficiary under the terms of the insurance policy, equities may arise in favor of the wife as named beneficiary that would deny the husband the right to so change the beneficiary of such policy. Further, the restraining order had for its purpose the preservation of the *status quo* between the divorce action, until a final adjudication of the parties' property rights could be made. *Id.;* see, also, *Willoughby v. Willoughby* (D.Kan.1990), 758 F.Supp. 646 (finding that a similar restraining order prevented the insured from changing the beneficiary of a life insurance policy pending further disposition of the matter).

■ In the present case, Mr. Concepcion disregarded a direct order of the court precluding him from changing the beneficiary of his life insurance policies. Furthermore, Mr. Concepcion filed a fraudulent affidavit with the court. Due to Mr. Concepcion's improper conduct, we find that appellant would have been unjustly enriched at appellee's expense.

■ It is well established that where unjust enrichment is found, it may serve as the basis for the operation of a constructive trust. *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 226, 9 OBR 565, 567–568, 459 N.E.2d 1293, 1295–1295. Unjust enrichment occurs when a party retains money or benefits that in justice and equity belong to someone else. *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 110–111, 532 N.E.2d 124. The constructive trust is a remedial technique utilized by courts of equity to do justice. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 172, 63 O.O.2d 262, 268, 297 N.E.2d 113, 120. In Ohio, a party seeking to enforce a constructive trust must establish the facts that give rise to such a trust by clear and convincing evidence. *Hill v. Irons*

---

1. The court also rejected appellant's contention that at the moment of the insured's death, the divorce action abated, thereby terminating the temporary restraining order issued by the trial court. The court reasoned that "[the insured's] power and authority to make a beneficiary change was under inhibition until the moment of his death, after which moment no change could have been made by anybody." *Id.* at 104, 536 N.E.2d at 673–674, fn. 5.

(1953), 160 Ohio St. 21, 50 O.O. 485, 113 N.E.2d 243; *In re Estate of Taylor* (June 21, 1991) Lawrence App. No. 1957, unreported, 1991 WL 110230.

In the present case, on September 10, 1997, Mr. Concepcion, in direct contravention of an order of the court, removed appellee as the beneficiary of the proceeds of the AFBA policy.[2] Thereupon, Mr. Concepcion designated appellant as sole beneficiary under the policy. Further, on September 17, 1997, Mr. Concepcion filed a fraudulent affidavit with the trial court, under oath and in the presence of a notary public, which indicated that the designated beneficiary of the AFBA policy had not been changed since the temporary restraining order was issued by the trial court on August 15, 1997.

Pursuant to the foregoing, we find that appellee has set forth sufficient facts to meet the clear and convincing standard of proof needed for the imposition of a constructive trust. Therefore, we find that imposition of a constructive trust upon the proceeds of the AFBA policy is the appropriate remedy in the present case. Thus, on this issue, summary judgment in favor of appellee was proper.

Accordingly, appellant's proposition is without merit.

## II. The SGLI Policy

Appellant maintains in her assignment of error that the trial court erred in designating appellee a one-half beneficiary of the proceeds of the SGLI policy. In her brief, appellant asserts that the judgment of the trial court, having been made in direct contravention of federal authority, must be set aside. For the reasons that follow, we agree.

The Servicemembers' Group Life Insurance Act ("SGLIA") was established in 1965 to make life insurance coverage available to members of the armed forces. Section 1965 *et seq.*, Title 38, U.S.Code. The SGLIA establishes a statutory scheme listing the order of preference for the beneficiaries of the proceeds of an SGLIA policy. *Prudential Life Ins. Co. v. Music* (W.D.Mich.1997), 977 F.Supp. 842; see, also, Section 1970(a), Title 38, U.S. Code.. Section 1970(a) of the SGLIA provides:

"Any amount of insurance under this subchapter in force on any member or former member· on the date of the insured's death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of the insured's death, in the following order of precedence:

---

2. We also note that on August 24, 1997, Mr. Concepcion, in contravention of the temporary restraining order, removed appellee as a one-half beneficiary of the proceeds under the SGLI policy.

"First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death (1) in the uniformed services if insured under Servicemembers' Group Life Insurance[.]"

The SGLIA also contains an antiattachment provision that prohibits a court of law from seizing or attaching the proceeds of any SGLI policy. See Section 1970(a)(2)(g), Title 38, U.S. Code. The statute provides:

"Payments of benefits due or to become due under Servicemembers' Group Life Insurance * * * made to, or on account of, a beneficiary shall * * * not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

It is well established that pursuant to Clause 2, Article VI of the United States Constitution, the Supremacy Clause, the United States Congress has the power to preempt state law. *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85, 89. "State law may be preempted by federal law when a federal statute includes language that explicitly provides for preemption of state law, when the wording or legislative history of the federal statute shows Congress' intent to exclusively regulate the area, or *where the state law conflicts with the federal regulatory scheme.*" (Emphasis added.) *Cleveland v. Berger* (1993), 91 Ohio App.3d 102, 109, 631 N.E.2d 1085, 1089, citing *Mowery v. Mercury Marine, Div. of Brunswick Corp.* (N.D.Ohio 1991), 773 F.Supp. 1012.

Implied conflict preemption can occur in essentially two instances: (1) where it is impossible to comply with both state and federal requirements, or (2) where state law obstructs congressional objectives. *Freightliner Corp. v. Myrick,* (1995), 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385, 392. Preemption analysis begins with a rebuttable presumption against preemption. *Jenkins v. James B. Day & Co.* (1994), 69 Ohio St.3d 541, 544, 634 N.E.2d 998, 1001.

In the present case, we are faced with an issue similar to that which the United States Supreme Court addressed in *Wissner v. Wissner* (1950), 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424. In *Wissner,* the insured held a National Service Life Insurance Act ("NSLIA") policy with his parents listed as the beneficiaries.[3] Upon the death of the insured, his wife claimed community property rights in the proceeds of the policy. The NSLIA however, provided that the insured had the right to select and to change the beneficiary under the policy. The statute, like

---

3. The National Service Life Insurance Act of 1940 and the National Service Life Insurance Act of 1958 ("NSLIA"), as amended, were early federally sponsored life insurance programs for armed services members. The programs were placed in effect shortly before the United States' involvement in World War II. The slight differences in the NSLIA and the SGLIA are insignificant for purposes of our discussion.

the SGLIA, also contained an antiattachment provision. The Court held that the parents were the rightful beneficiaries under the policy and that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." *Id.* at 658, 70 S.Ct. at 400, 94 L.Ed. at 428.

The United States Supreme Court in *Free v. Bland* (1962), 369 U.S. 663, 670, 82 S.Ct. 1089, 1094, 8 L.Ed.2d 180, 185–186, further endorsed the holding set forth in *Wissner, supra.* The Court held:

"Congress made clear its intent to allow a serviceman to select the beneficiary of his own government life insurance policy regardless of state law, even when it was likely that the husband intended to deprive his wife of a right to share in his life insurance proceeds, a right guaranteed by state law." *Id.*

However, the court also recognized that federal law "was not intended to be a shield for fraud, and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of the husband[.]" *Id.* at 670, 82 S.Ct. at 1094, 8 L.Ed.2d at 185.

A similar result was reached by the United States Supreme Court in *Ridgway v. Ridgway* (1981), 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39. In *Ridgway*, the insured's first and second wives both applied for benefits pursuant to an SGLI policy. Prior to his death, the insured had designated his second wife as the beneficiary of the proceeds under the policy. Upon his death, the first wife filed a claim for the proceeds based upon the divorce decree, which had designated her as the rightful beneficiary of the proceeds.

The court held in favor of the second wife, thus rejecting the Supreme Court of Maine's imposition of a constructive trust upon the proceeds of the insurance policy. The court concluded that "the controlling provisions of the SGLIA prevail over and displace inconsistent state law." *Id.* at 60, 102 S.Ct. at 57, 70 L.Ed.2d at 51. Thus, the imposition of a constructive trust upon the proceeds of the policy was a forbidden "seizure" and must be set aside as an unreasonable infringement of federal power. *Id.*

According to the majority, however, the preclusion of a state-based remedy in the event that the remedy conflicts or is inconsistent with the SGLIA is not absolute. The court, in its majority opinion, stated the following:

"A careful reading of the complaint and the amended complaint * * * in this case reveals no allegation of fraud or breach of trust. And we are not inclined to provide or infer such an allegation when a case comes to us, as this one does, with the record indicating nothing more than a breach of contract on the part of the deceased service member." *Id.* at 58, 102 S.Ct. at 59, 70 L.Ed.2d at 50.

We may construe the court's decisions in *Ridgway* and *Free, supra,* to stand for the proposition that in limited circumstances the imposition of a state-based

remedy may be appropriate.[4] For example, such as the case where the insured has been coerced or unduly influenced in his or her selection of a beneficiary, the application of a state-based remedy may be proper. The facts of the present case, however, do not fall within the ambit of such an exception. Thus, although we recognize the well-established axiom that equity considers as done that which ought to be done, in the case *sub judice* federal law demands otherwise.

Although our result today may seem inequitable, we must observe the clear and definite congressional mandate that the proceeds of an SGLI policy must be paid to the named beneficiary in the policy, and that the insured has the right to freely designate the beneficiary of his or her own choice. For these reasons, the imposition of a constructive trust in favor of appellee upon one-half of the proceeds of the SGLI policy is an inappropriate remedy in the present case. Therefore, we find that on this issue the trial court erred in granting summary judgment in favor of appellee.

Accordingly, appellant's assignment of error is well taken and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

THOMAS F. BRYANT, P.J., concurs.

KERNS, J., concurs in part and dissents in part.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.

KERNS, Judge, concurring in part and dissenting in part.

Unquestionably, Congress made clear its intent to allow a serviceman to select the beneficiary of his own government life insurance policy regardless of state law, but such legislation was not designed to overlook or ignore fraud or misrepresentation. Where the undisputed facts reveal a clear departure from the manifest purpose of such legislation, the law is not helpless to do that which in fairness ought to be done.

---

4. See, also, *Yiatchos v. Yiatchos* (1964), 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (recognizing that the federal law is not to be used as a shield for fraud or for a breach tantamount to fraud).